Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8180 | **DATE** | 2/14/2001 |
| **CASE TITLE** | MARY A. ORIGEL vs. COMMUNITY ACTION SERVICES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant's motion for summary judgment is denied. Status hearing held and continued to February 28, 2001 at 9:30 a.m.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 15 2001 | |
| | Notified counsel by telephone. | | date docketed | 35 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION.

| | |
|---|---|
| MARY A. ORIGEL,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITY ACTION SERVICES,<br>an Illinois corporation,<br><br>Defendant. | Case No. 99 C 8180<br><br>The Honorable John W. Darrah<br><br>**DOCKETED**<br><br>FEB 1 5 2001 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary A. Origel ("Origel" or "Plaintiff") has filed a one-count complaint against Defendant, Community Action Services, an Illinois Corporation, ("Defendant" or "CASI"), for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000(e-3)(a). (Compl. 1). Origel alleges that Defendant issued a stop-payment order on her bonus check in retaliation for her decision to file an affidavit and testify in a third-party's case pending against Origel. (Compl. 2). Defendant Community Action Services has moved for summary judgment pursuant to FED.R.CIV.P. 56. For the reasons that follow, the Court DENIES Defendant's Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes

35

of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Plaintiff Mary Origel began working for Defendant Community Action Services as an administrative assistant on October 3, 1988. (Pl.'s 56.1 ¶ 1). CASI is a not-for-profit organization

providing community-based busing services primarily for school children. (Def.'s 56.1 ¶ 1).

When Origel began her employment as an administrative assistant, she reported to then Executive Director Michael Perry. (Def.'s 56.1 ¶ 2). As part of her job responsibilities, the Plaintiff prepared employee time sheets, which, in turn, were forwarded to an outside vendor of payroll services for preparation of the actual payroll checks. (Def.'s 56.1 ¶ 11). A check log was kept of every check that was cut which documented the amount of the check, the payee and the reason for the check. (Def.'s 56.1 ¶ 11). Because she was also responsible for the maintenance of all personnel files, the Plaintiff had access to all information pertaining to each employee, including administrative personnel. (Def.'s 56.1 ¶ 13). Plaintiff knew when raises were given as well as when other financial considerations were given to an employee because she prepared the payroll worksheets. (Def.'s 56.1 ¶ 13).

Origel worked continuously for CASI on a full-time basis for nearly eleven years until her retirement on July 16, 1999 at age 65. (Pl.'s 56.1 ¶ 1).

On July 31, 1999, the Plaintiff signed an affidavit in a Title VII action being brought against CASI by her former supervisor, Michael Perry. (Def.'s 56.1 ¶ 30). The affidavit was filed on August 11, 1999. (Pl.'s 56.1 ¶ 69). The Origel affidavit contradicted an affidavit filed by CASI's Chairman of the Board, Robert Donaldson. (Pl.'s 56.1 ¶ 71). *See e.g.* (Ex. C ¶ 12, Ex. D ¶ 14).

On August 12, 1999, the Plaintiff received a check (no. 15505) from CASI dated August 11, 1999 in the amount of $2,500. (Def.'s 56.1 ¶ 25). The check was delivered to Origel's home personally by one of CASI's drivers. (Pl.'s 56.1 ¶ 24). The stub for check no. 15505 read "retirement bonus." (Pl.'s 56.1 ¶ 26). The check had been signed by Robert Donaldson in his capacity as Defendant's Chairperson and member of its Board of Directors. (Pl.'s 56.1 ¶ 28). At the

time he signed Origel's retirement bonus check, Donaldson had served as Defendant's Chairperson for more than two years and had been a member of the Board of Directors for nine years. (Pl.'s 56.1 ¶ 29). Rev. James Springfield also signed the check. (Def.'s 56.1 ¶ 25). At the time he signed and authorized the check, Springfield had been a member of Defendant's Board of Directors for eleven years and had served as Defendant's Treasurer for more than two years. (Pl.'s 56.1 ¶ 32). Springfield has stated that when he signed the check, he realized it was a retirement payment because he was told this by Elaine Walker. (Pl.'s 56.1 ¶ 34, 37). Elaine Walker has been a member of CASI's Board of Directors for approximately three-and-one-half years. (Def.'s 56.1 ¶ 3). She is both secretary to the Board and a Board member. (Def.'s 56.1 ¶ 3). On August 11, 1999, the only people with check-signing authority at CASI were Donaldson and Springfield. (Pl.'s 56.1 ¶ 30). Defendant's General Manager, Louis Maldin, also approved the check when it was made. (Pl.'s 56.1 ¶ 42, Pl. Ex. 7, at 75). On August 11, 1999, Defendant's Board of Directors consisted of five individuals: Chairperson Donaldson, Elaine Walker, Treasurer Springfield, William Holt, and Alberta Steele. (Pl.'s 56.1 ¶ 44). At the time the check was issued, it had been signed and/or approved by three of the five Directors on Defendant's Board.

The parties dispute what this check represented. Defendant claims it was a discretionary "bonus" (Def.'s 56.1 ¶ 25), while Plaintiff contends that it represented the "nondiscretionary" remainder of a raise she had been awarded the previous year (Pl.'s 56.1 ¶ 17). She contends that when she asked Donaldson why she had received a raise which was $2,500 less than another employee, he had told her that, when she retired, she would "get a nice bonus."

On August 18, 1999, a copy of Ms. Origel's affidavit was transmitted to and received by the Defendant at its office. (Pl.'s 56.1 ¶ 72). That same day, August 18, 1999, a stop-payment order was

issued on check no. 15505. (Def.'s 56.1 ¶ 36).

The Board of Directors of CASI met on August 24, 1999. (Pl.'s 56.1 ¶ 79). The Board voted to rescind the $2,500 check to Plaintiff at this meeting. (Pl.'s 56.1 ¶ 79). When asked in his deposition whether the Board also discussed Origel's affidavit at this meeting, Chairman Donaldson first said they did and then claimed they did not. (Pl.'s 56.1 ¶ 81).

Plaintiff deposited check no. 15505 on August 27, 1999. (Def.'s 56.1 ¶ 29). Plaintiff did not speak to or correspond with anyone at CASI between August 12 and August 27, 1999. (Def.'s 56.1 ¶ 29). Plaintiff did not learn about the stop-payment order until September 3, 1999 when, upon opening her mail, she saw the returned check no. 15505 and her bank's notice that payment on the check had been stopped. (Pl.'s 56.1 ¶ 88).

## ANALYSIS

To establish a prima facie case of retaliation[1] under Title VII, Plaintiff must establish that: (1) she engaged in "statutorily protected expression," (in this case, Plaintiff's protected expression consisted of filing an affidavit in a fellow employee's Title VII case); (2) she suffered an adverse, job-related action by her employer; (3) there is a causal link between her opposition to unlawful discrimination and the adverse employment action. *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997). Defendant has challenged the second and third elements of Plaintiff's

---

[1] Title VII, 42 U.S.C. § 2000e-3(a) reads in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice, by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

case for retaliation.

**Existence of an Adverse Employment Action**

Plaintiff contends that Defendant's issuance of a stop payment order on her retirement payment after she retired constituted an adverse employment action or action with a nexus to employment in violation of Title VII. Defendant argues that the cancellation of Plaintiff's retirement payment did not constitute an adverse employment action because: (1) Plaintiff was no longer an employee when the check was canceled; and (2) the cancellation had no nexus to employment. (Def. Mot. 5,6).

Former employees have a right to sue their former employers under Title VII's retaliation provision. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 845 (1997). The Seventh Circuit has noted that "former employees, insofar as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment, do have the right to sue their former employers" under 42 U.S.C. § 2000e-3(a). *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996). Conduct that is related to Plaintiff's former employment is actionable under Title VII. Id. at 887.

Defendant has correctly pointed out that Plaintiff has not accepted or sought new employment after retiring from CASI. Therefore, CASI's alleged retaliatory action (canceling the check) cannot be said to affect Plaintiff's future employment prospects. However, the relevant question in this case is whether Defendant's cancellation of the "retirement payment" can be said to have a "nexus" to her employment at CASI. This Court finds that it does, regardless of whether this payment is characterized as a "gift" (the explanation proffered by Defendant) or a "delayed raise" (the explanation proffered by the Plaintiff). Loss of pay or material benefits deriving from employment

-6-

constitute an adverse employment action. *Smart v. Ball State University*, 89 F.3d 437, 440 (7th Cir. 1996). The Court need not resolve the divergent characterizations of this payment on this Motion for Summary Judgment since, in both cases, the payment can be said to be connected (have a nexus) to Plaintiff's performance of services for Defendant. The fact that the check read "retirement bonus" establishes that the employer itself believed that the check bore a nexus to her employment (or more specifically, the cessation of her employment at Defendant).

**Causal Connection between Protected Action and Adverse Employment Action**

Plaintiff contends that Defendant's cancellation of her "retirement payment" came as the result of her decision to proffer an affidavit in another case being brought against Defendant. To succeed on her claim of retaliation, Plaintiff must show that there was a causal link between the protected expression and the adverse employment action. If the Defendant offers a "legitimate" reason for the act, the Plaintiff must show that this reason is pre-textual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25 (1973). *See also e.g.*, *Cuevas v. Monroe Street City Club*, 752 F.Supp. 1405, 1409 (N.D. Ill 1990)(Shadur, J.). Defendant has argued that: (1) there was no causal connection because the person who allegedly stopped payment on the check did not know of the affidavit Plaintiff filed; (2) it had a legitimate reason for taking this action because Walker did not have authority to authorize the check, and cancellation of the check was consistent with and came as a result of its policy of not awarding bonuses to administrative personnel.

Plaintiff has made out a prima facie case of retaliation. Although she has proffered no direct

evidence, she has offered enough sufficient evidence[2] so that a jury could reasonably conclude that the cancellation was caused by the filing of her affidavit. The fact that Defendant received the affidavit and canceled the check on the same day raises a material issue of fact as to whether there was a causal connection. "Generally, a plaintiff may establish such a link through evidence that the [adverse employment action] took place on the heels of protected activity." *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994). *See also, Troupe v. May Department Stores*, 20 F.3d 734, 736 (7th Cir. 1994)("suspicious timing" may constitute circumstantial evidence of causal link).

Plaintiff's showing of a causal connection is bolstered by the testimony of Elaine Walker, the Board member who stopped payment on the check. When asked whether she knew of Plaintiff's affidavit at the time she allegedly discovered that the $2,500 check violated company policy, Walker said she didn't recall. (Pl. Ex. 8, at 143). Although Walker admits that she ultimately found out about the affidavit, she doesn't recall when she found out. (Pl. Ex. 8, at 101). Contrary to Defendant's arguments (Def. Mot. 8)("Sole decision-maker had no knowledge of Affidavit and acted without authority."), not even Elaine Walker herself can say whether she knew about the affidavit at the time she stopped payment on the check. Ambiguous statements such as these may also constitute circumstantial evidence of a causal link. *Troupe v. May Department Stores*, 20 F.3d 734, 736 (7th Cir. 1994).

---

[2] None of the evidence offered by Plaintiff (Pl. Res. 3-5) constitutes "direct evidence" which allows her to bypass the burdens of the *McDonnell Douglas* analysis. All of Plaintiff's evidence requires that additional inferences be drawn. The Seventh Circuit has noted the rarity with which direct evidence arises in Title VII cases since employers have learned not to put discriminatory beliefs into words, oral or written. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

Lastly, the causal link is further strengthened by the fact that Chairman Robert Donaldson was not able to state unequivocally that Mary Origel's affidavit was not discussed at the Board meeting at which the Defendant decided to rescind the $2,500 check. (Pl. Ex. 6, at 124). When asked whether the affidavit had been discussed, Donaldson first said the issue of the affidavit had come up, and then apparently contradicted his testimony by saying that it hadn't been discussed. (Pl. Ex. 6, at 124).

Since the Plaintiff has met her summary judgment burden of showing a causal link, the burden shifts to Defendant to articulate a legitimate reason for stopping payment on the check. Defendant has argued that it stopped payment on the check when Elaine Walker realized that issuance of the check violated CASI's policy of not issuing checks over $500. If proven, this reason would be legitimate. The burden then shifts back to Plaintiff to show that this reason is no more than pretext.

Plaintiff has met her burden of showing that a reasonable jury might conclude that Defendant's proffered explanation is pre-textual. To meet this burden, Plaintiff must "'produce evidence from which a rational trier of fact could infer that the company lied' about its proffered reasons for [her] dismissal ... [i]f an inference of improper motive can be drawn, there must be a trial." *Mills v. Health Care Service Corporation*, 171 F.3d 450, 458 (7th Cir. 1999)(citations omitted). Plaintiff has shown that three of CASI's five Board members signed and/ or authorized the check at the time it was issued. A reasonable jury might conclude from this fact alone that the issuance of the check constituted a decision to depart from the allegedly "usual" policies of not issuing bonuses in amounts over $500 and not issuing bonuses to administrative personnel and that cancellation of the check constituted retaliation.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

_____
John W. Darrah, Judge
United States District Court

Date: February 14, 2001